Filed 5/18/15  Sanchez v. Sanchez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALBERT SANCHEZ, SR., | D064272 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00093124-CU-OR-CTL) |
| ALBERT SANCHEZ, JR., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Dismissed in part, affirmed in part.

Mirch Law Firm, Kevin J. Mirch, Marie C. Mirch and Erin E. Hanson for Plaintiff and Appellant.

Teeple Hall, Grant G. Teeple and Frederick M. Reich for Defendants and Respondents.

Plaintiff Albert Sanchez, Sr. (Plaintiff), appeals from a judgment following a court trial in favor of defendants Albert Sanchez, Jr. (Sanchez, Jr.), Linda Schrader (Schrader),

Eddie Sanchez (E. Sanchez), Cynthia Sanchez, ALS Holdings, LP (ALS Holdings) and ALO Investments, LLC (ALO Investments) (together, Defendants).  Because E. Sanchez is not a party to the appeal, we will dismiss the appeal as to him.  Plaintiff argues that the record lacks substantial evidence to support the defense judgment, as explained in the court's statement of decision, and that the court erred in relying on exhibits that were not admitted into evidence.  Because Plaintiff did not meet his burden of establishing prejudicial error, in part by not providing a sufficient record, we will affirm the judgment.

## I.

## PLAINTIFF'S BURDENS ON APPEAL

A fundamental rule of appellate review is that an appealed judgment is presumed correct.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*).)  Accordingly, where the record is silent, " ' "error must be affirmatively shown." ' "  (*Ibid.*)

To overcome this presumption, "a party challenging a judgment has the burden of showing reversible error by an adequate record."  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; see *Ketchum*, *supra*, 24 Cal.4th at p. 1141.)  Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct and, on that basis, affirm.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Ketchum*, at p. 1141; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 (*Hernandez*) ["Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]."].)

Plaintiff designated a 177-page clerk's transcript and a 15-page reporter's transcript.  Of the 24 documents in the clerk's transcript, only six are even arguably

relevant.[1]  The 15-page reporter's transcript contains a partial transcription of events from two different trial days:  (1) nine pages containing Sanchez, Jr.'s testimony dealing with documents from ALO Investments' bank accounts (trial exhibits 251-255), Plaintiff's evidentiary objection to the bank documents and the court's ruling sustaining Plaintiff's objection; and (2) six pages containing the court's oral ruling from the bench and Plaintiff's request for a statement of decision.  After the record on appeal was transmitted to this court, Plaintiff augmented the record to include:  (1) a one-volume, 439-page "Augmented Record on Appeal" (usefully providing, *inter alia*, a complete copy of the first amended complaint, some of the clerk's minutes from the trial and some of the trial exhibits);[2] and (2) a one-page reporter's transcript from the first day of trial (with no indication of the identity of the witness).[3]

---

[1]     In his opening brief, Plaintiff cites numerous times to his declaration in opposition to Defendants' summary adjudication motion.  Because there is no indication in the record that this declaration was admitted into evidence at the trial, however, we cannot rely on it for any fact that was at issue during the trial.  (See *People v. Valdez* (2004) 32 Cal.4th 73, 126 [document included in clerk's transcript but *not in evidence at trial* cannot be considered as evidence on appeal].)

[2]     While we appreciate receiving copies of trial exhibits, by providing them in this format, Plaintiff has not complied with rule 8.224 of the California Rules of Court.  (All further rule references are to the California Rules of Court.)  We have considered these copies, since Defendants did not oppose Plaintiff's motion to augment and have not objected to the copies Plaintiff submitted in his "Augmented Record on Appeal."

[3]     Despite what appears to have been at least a five-day trial (and perhaps as long as seven days; Plaintiff has not provided a sufficient record), Plaintiff has provided a total of 16 pages of reporter's transcript, only nine of which contain evidence.

Plaintiff's failure to have provided a complete record of the oral proceedings is fatal to his substantial evidence arguments. Where, as here, a complete reporter's transcript has not been provided and the purported error is not apparent on the face of the existing record, "the judgment must be *conclusively presumed correct* as to *all evidentiary matters*." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*).) Under such circumstances, we must "presume[] that the unreported trial testimony would demonstrate the absence of error," the effect of which "is that an appellant who attacks a judgment but supplies [an incomplete] reporter's transcript [may] be precluded from raising an argument as to the sufficiency of the evidence." (*Ibid*.)

Plaintiff's failure to have complied with these basic appellate rules and procedures has limited our ability both to provide detailed background and to reach the merits of some of Plaintiff's arguments.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND[4]

A. *Pretrial Proceedings*

In his first amended complaint, Plaintiff asserted claims to quiet title to two real properties — one in Imperial Beach (Imperial Beach Property) and one in El Cajon (El Cajon Property) (together, the Properties) — and for financial elder abuse. Plaintiff

---

[4] Because Plaintiff has not provided a reporter's trial transcript from which we could have better understood the facts and evidence, we will rely in part on unchallenged, noncontroversial statements in Plaintiff's opening brief; in part on the allegations in the first amended complaint; and in part on statements in the parties' brief that contain accurate record references.

4

named and identified the defendants as follows: Sanchez, Jr., Plaintiff's son; Schrader, Plaintiff's daughter; Cynthia Sanchez, Sanchez, Jr.'s wife; ALS Holdings, a "family limited partnership" formed by Sanchez, Jr., and Schrader; ALO Investments, the current record owner of the Properties; First American Title Company, escrow holder for a transfer of the Imperial Beach Property; and Stearns Lending, Inc., and American Securities Company, two lenders that each hold a security interest in the Imperial Beach Property.

Defendants, including E. Sanchez who is not named in the unverified first amended complaint, filed a verified answer, admitting and denying various allegations in the "*verified* first amended complaint" (bolding and capitalization omitted) and asserting various affirmative defenses.[5]

According to Plaintiff (with no record reference), in 2002 he provided $675,000 for Sanchez, Jr., to purchase the Imperial Beach Property and on that basis argues that he should have been designated the owner. Citing certain trial exhibits, Plaintiff tells us that Sanchez, Jr., directed that title to the Imperial Beach Property be taken in the name of ALS Holdings; that ALS Holdings transferred title to Sanchez, Jr.; that Sanchez, Jr., used the Imperial Beach Property as collateral for a loan, encumbering the property with a deed of trust in the amount of $487,250; that Sanchez, Jr., reconveyed title to ALS

---

[5] The multiple copies of the first amended complaint in the record on appeal — filed March 9, 2012 — are not verified and do not name E. Sanchez. E. Sanchez appears to have answered a different "verified first amended complaint" — one that is not before us. In part II.C., *post*, we discuss further the operative complaint.

Holdings; that ALS Holdings again transferred title to Sanchez, Jr., who again used the property as collateral for a loan, encumbering the property with an additional deed of trust in the amount of $258,975; and that Sanchez, Jr., then transferred title of the Imperial Beach Property to ALO Investments, which held title at the time of trial. Plaintiff further contends that certain trial exhibits establish that in 2005 Sanchez, Jr., used the proceeds from the two loans for which the Imperial Beach Property was collateral for ALO Investments to purchase the El Cajon Property. Plaintiff argues that he did not learn until 2010 that title to the Imperial Beach Property was never in his name; Plaintiff does not tell us when he first learned about the two loans or the purchase of the El Cajon Property.[6]

B.    *Trial*

Between January 20 and 30, 2013, the court presided over a nonjury trial.[7] The only parties were Plaintiff and Defendants, although there is an issue whether E. Sanchez was a defendant at the time of trial, as we discuss at part II.C., *post*.[8] In the Discussion at part III., *post*, we will supplement the events at trial as necessary.

---

[6]    Based on the statement of decision, there does not seem to have been a statute of limitations issue at trial regarding Plaintiff's knowledge of the name(s) of the record owners of the Properties.

[7]    Because Plaintiff has not provided either a complete reporter's transcript or all of the clerk's minutes from the trial, we do not know how many days the parties were in trial.

[8]    During pretrial proceedings, the court sustained without leave to amend a demurrer brought by Stearns Lending, Inc.; the court dismissed American Securities Company; and Plaintiff requested that First American Title Company be dismissed with

6

Following closing argument, the court issued an oral ruling, finding in favor of Defendants and against Plaintiff on all claims. Plaintiff requested a statement of decision. The court filed its statement of decision in March 2013, finding in part, as relevant to the issues on appeal: for health and business reasons, Plaintiff "wanted to make sure that his children were taken care of"; he "wanted to make sure that everything related to his [eventual] estate was taken care of"; "Plaintiff was aware of the titling of the Imperial Beach Property and the El Cajon Property in the Defendants' names, and . . . *he intended said titling and consented thereto*"; "the Plaintiff's *intent and desire* at all times relevant was to place his properties in the name of his children so that they would be protected"; and "having found that the title of the Imperial Beach Property and El Cajon Property are appropriate and based upon *the intent of the Plaintiff and Defendants*, . . . no financial elder abuse has occurred . . . related to these [P]roperties as there was no wrongful use, fraud or undue influence nor harm to the Plaintiff established in the transfer[s of these Properties]," as required for a claim of financial elder abuse. (Italics added.)

On March 5, 2013, the court entered a judgment in favor of all Defendants and against Plaintiff, consistent with its statement of decision.

C.      *Appeal*

Plaintiff timely appealed from the judgment.

---

prejudice (though Plaintiff does not tell us whether First American Title Company actually was dismissed). Without record references, Plaintiff also tells us that Wells Fargo Bank, N.A., "never appeared in the action, and Plaintiff's request for default was denied"; the operative complaint does not name the bank.

In their briefing on appeal, the parties tell us that Plaintiff tried a cause of action for physical elder abuse against E. Sanchez, and the statement of decision and judgment contain rulings in favor of E. Sanchez and against Plaintiff on such a claim. However, the copies of Plaintiff's first amended complaint in the record on appeal neither name E. Sanchez as a defendant nor contain a cause of action for physical elder abuse. Accordingly, we requested and received supplemental briefing from the parties as to their respective positions regarding E. Sanchez's status in the appeal. (Gov. Code, § 68081.) Based on the parties' written responses and the record on appeal, (1) Plaintiff's counsel drafted, signed on January 12, 2012, and *apparently served but did not file* a *verified* first amended complaint that named E. Sanchez only in the fourth cause of action for physical elder abuse; and (2) Plaintiff's counsel drafted, signed on November 28, 2011, and *filed* (on Mar. 9, 2012) *but apparently did not serve* an *unverified* first amended complaint that did not name E. Sanchez. Defendants, including E. Sanchez, filed a *verified* answer in April 2012; and the parties proceeded to discover and try a case based on a complaint that Plaintiff never filed. Despite the parties' unresolved confusion as to the operative complaint, we are satisfied that E. Sanchez is not a party to the appeal and, accordingly, dismiss the appeal as to him.[9]

---

[9] Although Plaintiff's counsel believes she asserted a cause of action against E. Sanchez for physical elder abuse on Plaintiff's behalf, counsel has confirmed both that she raises no issue on appeal with regard to either E. Sanchez or physical elder abuse and that E. Sanchez should not be a party to the appeal.

III.

DISCUSSION

Plaintiff raises five distinct issues on appeal. First, he contends that the trial court failed to quiet title to the Properties for Plaintiff's benefit, by improperly applying the evidence to the doctrines of constructive trust and resulting trust. As a second, but related issue, Plaintiff maintains that, in the statement of decision, the court erred in relying on a 2009 e-mail to establish Plaintiff's intent and understanding in 2002 when the Imperial Beach Property was purchased. Third, Plaintiff argues that, had the court properly quieted title to the Properties, the court necessarily would have ruled in Plaintiff's favor on the claim for financial elder abuse. Fourth and fifth, Plaintiff claims that the trial court erred in dealing with exhibits; according to Plaintiff, the court never admitted any of the trial exhibits despite Plaintiff's request, and then the court improperly relied on certain exhibits that were expressly excluded. Because Plaintiff did not meet his burden of establishing prejudicial error as to any of the issues he raises on appeal, we will affirm.

Before we discuss the first three and fifth issues, which are reviewed for substantial evidence, we first will discuss the fourth issue regarding the trial court's admission into evidence of the exhibits identified at trial.

A.     *Exhibits*

Plaintiff contends he is entitled to a reversal of the judgment because the trial court never admitted into evidence any of the exhibits identified at trial. In support of his

9

argument, Plaintiff refers us to a portion of the reporter's transcript from the first day of trial (Jan. 22, 2013) and the clerk's minutes from five out of six days of trial.

On the first day of trial, the following exchange took place:

"[Plaintiff's counsel]:      I move to admit [exhibit] 12.

"THE COURT:               You don't have to ask. We'll get there."

The minutes Plaintiff provided consistently indicate that exhibits are marked and identified, but there is no indication that any exhibit is ever admitted into evidence. Based on these minutes, Plaintiff argues that without the admission of the evidence contained in the exhibits, the record necessarily lacks substantial evidence to support the findings in the statement of decision. We disagree.

Initially, to the extent Plaintiff truly believed there was an issue whether the trial exhibits were, in fact, introduced into evidence, *he* had the obligation to press the court for a ruling in order to preserve the issue for appeal. (See *People v. Ramirez* (2006) 39 Cal.4th 398, 450 [where court indicates an issue will be handled later, party's failure to press the court for a ruling fails to preserve the issue for review, since trial court deprived of the opportunity to correct potential error].) Perhaps anticipating this problem, Plaintiff tells us that he "objected to this in his Proposed Statement of Decision." However, his objection was that the court based its decision "on documents not admitted during testimony, i.e.[,] the Las Vegas/Wells Fargo Bank accounts," exhibits 251-255 (which we will discuss at pt. III.B., *post*) — not on the court's purported failure to admit all exhibits identified at trial. Thus, Plaintiff did not preserve this issue for appellate review.

10

In any event, the statement of decision does not identify any specific exhibit (other than exhibit 226, which we will discuss at pt. III. B., *post*).  Accordingly, because we conduct our substantial evidence review based on "*the entire record of the appeal*" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873 (*Bowers*)), we must presume that the unreported trial testimony contains all the evidence that supports the findings in the statement of decision (*Fain*, *supra*, 75 Cal.App.4th at p. 992), regardless what is contained in the trial exhibits.  Thus, Plaintiff's failure to provide a complete record on appeal "requires that the issue be resolved against [Plaintiff]."  (*Hernandez*, *supra*, 78 Cal.App.4th at p. 502.)

Moreover, Plaintiff concedes that "[t]he trial court indicted [*sic*] that generally whatever was talked about in trial would be admitted unless the trial court ruled otherwise."[10]  Thus, by his own explanation of the court's procedure, all exhibits, except those to which objections were sustained, were admitted into evidence.

Finally, on our motion, we took judicial notice of the superior court file — and, in particular, the last volume that contains the clerk's minutes from the trial.[11]  (Evid. Code,

---

[10]    Plaintiff's concession is without a record reference.  Defendants augmented the record with a portion of the reporter's transcript that included the court's actual ruling: "Anything that's identified by a witness that is not severely objected to is going to be made a piece of evidence."

[11]    Our interest was piqued in part because Plaintiff provided court minutes from trial days 1 through 4 and 6.  Plaintiff did not provide the minutes from January 29, 2013, yet from the entries in the minutes of January 28 and 30, we knew that January 29 was also a trial day.

§§ 452, subd. (d)(1), 459, subd. (a).) Indeed, the minutes from trial day 5 — January 29, 2013 — expressly provide:

> "3:36 pm     The defendants rest[] *subject to the admission of exhibits*.

> "*All previously identified Court's Exhibits are now* **RECEIVED** *into evidence*. A copy of the Court's Exhibit list is attached hereto and incorporated herein.

> "3:40 pm     Court is adjourned until 01/30/2013 at 09:00 AM in Department C-26." (Italics added; uppercase and underscore in original.)

All six days of the court's minutes are bright yellow in color and contained together in one volume of the superior court file that otherwise contains only white paper. Thus, the fact that Plaintiff obtained and provided copies of the minutes from the four prior trial days (Jan. 22, 23, 24 and 28, 2013) and the one subsequent trial day (Jan. 30, 2013) indicates at best a careless review of the superior court file and at worst an intentional act to mislead us as to the court's ruling on the admission of exhibits at trial. Rather than issuing an order to show cause why Plaintiff's counsel should not be sanctioned for misrepresenting the record on appeal, we take this opportunity to remind counsel of his professional obligations to refrain from deceptive acts or filing false documents or making false statements to the court. (Bus. & Prof. Code, § 6068, subd. (d) [attorney must employ "means only as are consistent with truth" and must never "seek to mislead the judge or any judicial officer"; *Rodgers v. State Bar* (1989) 48 Cal.3d 300, 315 ["The statute requires an attorney to refrain from misleading and deceptive acts without qualification."].)

There is no error related to whether the court admitted trial exhibits into evidence.

12

B.  *Quiet Title*

In the next three issues, Plaintiff challenges findings in the statement of decision, which requires us to determine whether the record contains substantial evidence to support the findings and, therefore, the judgment. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501 ["The substantial evidence standard of review applies to both express and implied findings of fact made by the court in its statement of decision."].) Plaintiff and Defendants agree that this is the appropriate standard of review.

Our consideration whether the statement of decision is supported by substantial evidence is governed by the well-established standard of review applicable to any claim that a finding is not supported by the evidence in the record:

> "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the [statement of decision] if possible. It is an elementary, but often overlooked principle of law, that when a [statement of decision] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [court]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford v. Southern Pac. Co.* (1935) 3 Cal.2d 427, 429.)

We "*look to the entire record of the appeal*"; and if there is such substantial evidence, "it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers*, *supra*, 150 Cal.App.3d at pp. 873, 874, some italics deleted.) The fact that the record may contain substantial evidence in support of an appellant's claims is irrelevant to our role, which is limited to determination of the sufficiency of the evidence *in support of the findings*

13

*actually made.*  (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)  Finally, the substantial evidence standard of review on appeal remains the same, regardless whether the normal "preponderance of the evidence" standard or the higher "clear and convincing" standard applied in the trial court.[12]  (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750.)

Plaintiff argues that, because there are "no facts in dispute" that he was the source of the $675,000 used to purchase the Imperial Beach Property, which was then used as the collateral for the loans used to purchase the El Cajon Property,[13] proper application of the doctrines of resulting trust and constructive trust *required* the court to quiet title in the Properties for Plaintiff's benefit.  According to Plaintiff, all he had to do was present evidence that he provided the funds for the Properties, and the court was *required* to find that ALS Holdings held the Properties in trust — either a resulting trust or a constructive trust — for the benefit of Plaintiff.  Once Plaintiff's beneficial ownership was established, Plaintiff's argument continues, Plaintiff was entitled to a judgment quieting title in his name in the two Properties.

---

[12]    We mention this because Plaintiff tells us that at trial he presented "clear and convincing evidence of a resulting trust."  Since Plaintiff provided merely 16 pages of reporter's transcript following a multi-day trial, we have no way of knowing the evidence he presented; and we express no opinion on the burden of proof required in the trial court.

[13]    Defendants agree that Plaintiff provided the funds to purchase the Imperial Beach Property.  We accept the parties' agreement, although we note from the limited record we have been provided that there is substantial evidence the funds came from Plaintiff's wife, Celerina Sanchez.

14

With regard to a resulting trust, Plaintiff cites *In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342 ("When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.") and *Martin v. Kehl* (1983) 145 Cal.App.3d 228, 238 ("Ordinarily a resulting trust arises in favor of the payor of the purchase price of the property where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another."). Significantly, these same authorities also explain that, because the *purpose* of a resulting trust is " 'to enforce the *intentions of the parties*' " (*In re Marriage of Ruelas*, at p. 342, italics added), to succeed on a claim for a resulting trust, a plaintiff must present sufficient proof of *the parties'* " '*intention* that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired' " (*Martin*, at p. 238, italics added).

> " 'A resulting trust arises from a transfer of property under circumstances showing that the transferee was not *intended to take the beneficial interest* . . . . It has been termed an "*intention-enforcing*" trust, to distinguish it from the other type of implied trust, the *constructive* or "fraud-rectifying" trust. The resulting trust carries out the inferred *intent of the parties* . . . .' "

(*American Motorists Ins. Co. v. Cowan* (1982) 127 Cal.App.3d 875, 884-885, some italics added; see 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 311, p. 885 ["A resulting trust arises from a transfer of property under circumstances showing that the transferee was *not intended* to take the beneficial interest." (Italics added.)].)

With regard to a constructive trust, as Plaintiff correctly posits, to prevail he was required to prove "(1) the existence of a *res* (property or some interest in property);

15

(2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it."[14] (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990; see Civ. Code, §§ 2223, 2224.) "All that must be shown is that the acquisition of the property was wrongful and that the keeping of the property by the defendant would constitute unjust enrichment." (*Calistoga Civic Club v. Calistoga* (1983) 143 Cal.App.3d 111, 116.) The *wrongful* acquisition or detention can be shown by evidence that the property was obtained as a result of fraud or mistake, crime, breach of fiduciary duty, undue influence, etc. (13 Witkin, Summary of Cal. Law, *supra*, Trusts, §§ 319-323, pp. 892-899.)

Under either a resulting trust or constructive trust theory, however, once again Plaintiff cannot succeed in establishing a lack of substantial evidence, because he has not provided a reporter's transcript sufficient for us to determine the intentions of the parties. Within the 16 pages of transcript that Plaintiff provided, he failed to include any of his own testimony, and the nine pages of transcript of Sanchez, Jr.'s testimony that Plaintiff provided do not contain any evidence related to the purchase of either of the Properties. This failure is fatal to Plaintiff's substantial evidence argument. (*Hernandez*, *supra*, 78 Cal.App.4th at p. 502.) Because we are required to conduct our substantial evidence review based on "*the entire record of the appeal*" (*Bowers*, *supra*, 150 Cal.App.3d at

---

14    We note that a constructive trust is not a cause of action, but rather "a *remedy* used by a court of equity to compel a person who has property to which he or she is not justly entitled to transfer it to the person entitled to it." (13 Witkin, Summary of Cal. Law, *supra*, Trusts, § 319, p. 892.)

p. 873), we must presume that the unreported trial testimony — especially that of Plaintiff — contains all the evidence that supports the findings of the parties' intent in the statement of decision (*Fain*, *supra*, 75 Cal.App.4th at p. 992).[15]

In addition to this presumption, we are satisfied that the record actually does contain substantial evidence of the parties' intent, as found by the court in the statement of decision. *Defendants* provided and discussed the evidence of the parties' intent and understanding at and before the time of the purchase of the Properties. The testimony of Sanchez, Jr., and Schrader — not provided by Plaintiff, supplied by Defendants with their brief and ignored by Plaintiff in his reply — contains substantial evidence supporting the findings in the statement of decision: Plaintiff had not been physically and mentally well since 2001; Plaintiff's "primary motivation" was "to ensure that [his children] were all taken care of"; in fall 2001, Plaintiff and his adult children had "multiple" conversations — initiated by Plaintiff — regarding setting up an estate plan; shortly before the purchase of the Imperial Beach Property, Plaintiff was concerned about the family's financial well-being, in part because he had tax issues with the Internal Revenue Service and in part because he had judgments against him; Sanchez, Jr., had "multiple" conversations in

---

[15]    On a related yet independent basis, in designating less than the entire reporter's transcript, Plaintiff forfeited his substantial evidence argument. Rule 8.130 provides in part that where "the appellant designates less than all the testimony, the notice must state the points to be raised on appeal," and "*the appeal is then limited to those points*." (Rule 8.130(a)(2), italics added.) Here, Plaintiff designated less than all the testimony, and in his notice of "points that you intend to raise on appeal," Plaintiff did not mention the lack of evidence to support the court's finding that Plaintiff was not entitled to a resulting trust or constructive trust. Thus, Plaintiff's appeal should be limited to exclude this issue.

17

which he told Plaintiff that ALS Holdings would take title to the Imperial Beach Property, and Plaintiff never objected; Sanchez, Jr., also discussed with Plaintiff the selection, purchase (in the name of ALS Holdings) and financing (using the Imperial Beach Property as collateral) of the El Cajon Property, and Plaintiff never objected; and ALO Investments, not Plaintiff, has paid all expenses (mortgages, taxes, association fees, assessments, insurance) except utilities associated with both Properties.[16]

In reply, Plaintiff suggests that we cannot consider this testimony, because the trial court did not expressly identify Sanchez, Jr., and Schrader as the sources of the evidence on which the court based its findings. We disagree. Code of Civil Procedure section 632 requires only that the court provide an explanation of "the factual and legal basis for its decision." Plaintiff does not cite — and we are unaware of any — authority that requires a trial court to identify the source(s) of the evidence relied on in making a factual finding in a statement of decision.

Next, according to Plaintiff, the statement of decision establishes that the court based its decision on what Plaintiff characterizes as "improper evidence" — namely, trial exhibits 251-255 (copies of bank documents from ALS Holdings' accounts) and exhibit 226 (copy of a Jan. 2009 e-mail from Plaintiff to Sanchez, Jr., Schrader, E. Sanchez and others). Again, we disagree.

---

[16]    Indeed, by failing to have presented this evidence — evidence that *supports* the court's rulings — Plaintiff forfeited his right to challenge the statement of decision based on insufficiency of the evidence to support it. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

With regard to exhibits 251-255, initially the parties dispute whether the court sustained Plaintiff's objection to all of the Wells Fargo bank documents (exhibits 251-255) or merely certain wire transfer documents (exhibit 255). Plaintiff's objections — during both the trial and the statement of decision process — were to exhibits 251-255; and because the court's ruling sustained Plaintiff's objection without limitation (even though, at the time of the objection, the line of questioning concerned only wire transfers and exhibit 255), we will assume the ruling applied to all six exhibits, Nos. 251-255.[17] Having reviewed the *testimony* that preceded and followed the sustaining of the objection regarding the bank documents, however, we are satisfied that the record contains substantial evidence of the court's finding that the "bank statements from Wells Fargo show that the alleged $800,000.00 in funds w[ere] never received by the Defendants." (See *People v. Rich* (1988) 45 Cal.3d 1036, 1090 [statement from psychiatrist's report read by witness was in evidence, even though the written report was not].) Furthermore, Plaintiff has not explained how or why he is prejudiced by the court's finding that Defendants did not receive $800,000 in wire-transferred funds, since the parties agree that Plaintiff provided the funds used to purchase the Imperial Beach Property, and the first amended complaint does not contain a claim for relief that is not based on the original $675,000 used to purchase the Imperial Beach Property. (Cal. Const., art. VI,

_____

17     Additionally, the fact that Plaintiff objected to all of the bank documents on hearsay grounds supports our assumption. For hearsay purposes, there would be no reason for the court to have treated one exhibit dealing with wire transfers into the Wells Fargo accounts differently than the other exhibits of the monthly Wells Fargo bank statements.

19

§ 13 ["miscarriage of justice" required for reversal]; Code Civ. Proc., § 475 ["prejudicial" error required for reversal]; Evid. Code, §§ 353, subd. (b), 354 ["miscarriage of justice" required for reversal]; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [" ' "reasonabl[e] probab[ility] that a result more favorable to the appealing party would have been reached in the absence of the error" ' " required for reversal].)

With regard to exhibit 226, Plaintiff argues that the court improperly relied on this 2009 document in determining his intent in 2002 (more than six years earlier) when the Imperial Beach Property was purchased. Exhibit 226 is a copy of a January 2009 e-mail from Plaintiff to his three adult children (Sanchez, Jr., Schrader and E. Sanchez) and others, in which Plaintiff wrote in part: "[I]t is imperative that all of my assets be transferred to all of the members of the family on an equal basis. It is totally and unequivably [*sic*] important that this be done as quickly as possible. . . . I don't want to die and everything is in limbo and disarray." However, here, as we set forth *ante*, without consideration of this exhibit, the record contains substantial evidence of the intentions of all the parties — both in 2002 when the Imperial Beach Property was purchased and in 2007 when that property was refinanced in order to purchase the El Cajon Property. Further, we note that, in the statement of decision, the court did not say it was relying on the 2009 e-mail as the sole or overriding piece of evidence. Rather, *after* making its findings regarding the events leading up to and including the purchases of the Properties — including the specific finding as to Plaintiff's intent — the court merely reaffirmed these findings based on *later* evidence: "The court makes specific

20

reference *by way of example* of the Plaintiff's expressed intent set forth in trial exhibit 226." (Italics added.)

In one additional argument, Plaintiff relies on Defendants' affirmative defense that the Properties were gifts, arguing that Defendants had the burden of proof in the trial court and, thus, the burden on appeal of establishing the substantial evidence in support of the trial court's ruling. However, the statement of decision does not contain findings that the Properties were a gift; rather, the court found that "Plaintiff was aware of the titling of the [Properties] in the Defendants' names, and that *he intended said titling* and consented thereto." (Italics added.) Moreover, Plaintiff's predicate (that Defendants had the burden of proof in the trial court) is wrong as a matter of law. For purposes of determining whether a resulting trust should be implied, where the grantees are the children of the claimant, " 'the burden is upon the payor seeking to enforce a resulting trust to prove that *he did not intend* to make a gift to the transferee.' " (*Altramano v. Swan* (1942) 20 Cal.2d 622, 628, italics added; see *Quinn v. Reilly* (1926) 198 Cal. 465, 468 ["the existence of the relationship of parent and child is a circumstance which *prima facie* establishes the presumption of an advancement [or gift] and thereby rebuts the presumption of a resulting trust"].)

In sum, we are not persuaded by Plaintiff's challenges to the court's findings denying both a resulting trust and constructive trust and, thus, to the judgment in favor in Defendants on the quiet title claims.

21

C.      *Financial Elder Abuse*

With regard to the claim for financial elder abuse, Plaintiff argues only:  "Had the trial court properly recognized [Plaintiff's] ownership in the [Properties] and quieted title, [Plaintiff] would have prevailed on his claim for financial elder abuse."  Because the court not did err in denying the claim to quiet title (see pt. III.B., *ante*), there is no basis on which to consider potential error in the rulings on elder abuse.

## DISPOSITION

The appeal is dismissed as to Eddie Sanchez, and the judgment is affirmed.  Albert Sanchez, Jr., Linda Schrader, Eddie Sanchez, Cynthia Sanchez, ALS Holdings, LP, and ALO Investments, LLC are entitled to recover their costs on appeal from Albert Sanchez, Sr.  (Rule 8.278(a).)


IRION, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.