[No. B128311. Second Dist., Div. Four. Feb. 23, 2000.]

JOSE HERNANDEZ, Plaintiff and Appellant, v.
CALIFORNIA HOSPITAL MEDICAL CENTER, Defendant and
Respondent.

## COUNSEL

Stewart Levin for Plaintiff and Appellant.

Rushfeldt, Shelley & Drake, Earl A. Beamon II, Dawn Cushman and Adrian J. Guidotti for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—Plaintiff Jose Hernandez, the son of Manuel Hernandez, appeals from summary judgment granted to defendant California Hospital Medical Center (respondent) in this medical malpractice action. After review of the record, we reverse.

## FACTS

This is a survival action brought by plaintiff to recover damages allegedly resulting from injuries received by his "over eighty years old" father during his hospitalization with respondent from December 7, 1996, through December 17, 1996.[1]

The operative complaint, the third amended complaint, alleges that respondent was negligent in that it "failed to maintain adequate hygiene to prevent the formation of decubiti on the sacral and coccyx region of the patient, failed to provide repositioning of the patient frequently enough to provide sufficient relief of pressure to avoid the formation of sacral and/or coccyx bedsores on the patient, failed to assess the skin condition of the patient, failed to seek medical advice and orders from a physician to treat the sacral and/or coccyx decubiti of the patient when such decubiti began to develop and to worsen, and failed to take any steps to promote healing of such sacral and/or coccyx decubiti." It was also alleged that as a result of respondent's negligence, Manuel Hernandez "suffered serious sacral and coccyx . . . decubiti" and "required multiple surgeries to attempt to heal the aforesaid sacral and coccyx bedsores. . . ." Plaintiff sought special and general damages.

Respondent moved to strike portions of the complaint, and the trial court granted the motion in part, striking plaintiff's prayer for general damages.

---

[1]Plaintiff's father died a year later on December 19, 1997. The Department of Health Services' death certificate lists that death resulted from a heart attack due to probable aspiration pneumonia and probable senile dementia. The survival action does not contend that death resulted from anything causally related to treatment received while plaintiff's father was hospitalized with respondent.

Respondent moved for summary judgment on the ground that plaintiff could not establish any recoverable damages. The trial court granted summary judgment for respondent, finding that plaintiff "failed to provide any competent admissible [evidence] which raises any triable issue of material fact to show that any action or inaction by defendant . . . damaged decedent Manuel Hernandez." The court thereafter entered a judgment for respondent.

## DISCUSSION

██ Plaintiff asserts error with regard to the trial court rulings granting the motion to strike and summary judgment.

### 1. *The Motion to Strike*

Plaintiff has chosen to perfect his appeal pursuant to California Rules of Court, rule 5.1 by providing us with his own appendix in lieu of a clerk's transcript. The appendix fails to provide us with a copy of respondent's motion to strike, any opposition filed by plaintiff, or the court's order granting the motion. Instead, he only includes in his appendix the notice of ruling. ██ Appealed judgments and orders are presumed correct, and error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Consequently, plaintiff has the burden of providing an adequate record. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932].) Failure to provide an adequate record on an issue requires that the issue be resolved against plaintiff. (*Id.* at pp. 1295-1296.) Without respondent's motion to strike, plaintiff's opposition, and the court's order, we cannot review the basis of the court's decision. Plaintiff has failed to carry his burden on this ruling.[2]

### 2. *The Motion for Summary Judgment*

██ A summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers. In order for a defendant to prevail on summary judgment it has the burden of negating one essential element of the cause of action asserted or to establish an affirmative defense to the claim. In determining whether a defendant has carried its burden, "[f]irst, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief

---

[2]Code of Civil Procedure section 377.34 precludes recovery of damages in a survival action "for pain, suffering, or disfigurement."

on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.]" (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) If defendant has carried its burden, the burden then shifts to plaintiff to demonstrate a triable issue of fact on the issue presented. (Code Civ. Proc., § 437c, subd. (o)(2).) Here, we conclude that respondent failed to carry its initial burden.

The sole cause of action asserted in the complaint is medical malpractice. It alleges that plaintiff's father developed bedsores while hospitalized with respondent due to respondent's negligent care and as a result "was required to incur medical bills and monetary obligations for medical services, surgical and hospital intervention and treatment, x-rays, drugs, physicians, hospitalization and for other medical services required in the treatment and relief of the injuries and bedsores herein alleged. . . ."

Respondent's motion for summary judgment was very narrowly drawn: it contended that plaintiff would be unable to prove the existence of any recoverable damages. The motion did not challenge any issue relating to negligence or causation, nor did it attempt to negate the allegations that plaintiff's father developed decubiti as a result of negligent treatment rendered by respondent and that he incurred medical expenses to remedy the problem.

In its separate statement of undisputed facts, respondent listed seven separate facts, of which only facts 3 and 4 are relevant to our discussion. Those facts are as follows:

"3. Manuel Hernandez's medical bills were covered by Medicare and [Medi-Cal].

"4. In plaintiff's response to defendant's Special Interrogatories requesting him to list all of the out-[of]-pocket expenses of the decedent, [plaintiff] replied that the only out of pocket expense was burial expenses in the amount of $2,600.00."

In response to the separate statement, plaintiff disputed fact No. 3, stating "There is no evidence that all medical bills were completely paid by Medi-Cal and Medicare." Fact No. 4 was "undisputed." In addition, plaintiff proffered his own "Additional Disputed Issues" with a single fact: "1.

Manuel Hernandez incurred reasonable and necessary medical bills in excess of $100,000.00 due to the negligence of defendant, California Hospital Medical Center." The supporting evidence cited the "Declaration of Davina J. Leary, R.N., attached hereto as Exhibit No. '1.'" In that declaration Ms. Leary states that she is a "licensed registered nurse with extensive experience and training in managing nursing care and providing nursing care in hospitals in Southern California." She also indicates that she had reviewed the medical records of respondent relating to plaintiff's father for his admission as well as "selected medical records of Mr. Manuel Hernandez from Country Villa Nursing Home based upon care that he received in December 1996 and thereafter, including January 1997, and medical and surgical reports and bills from Hollywood Community Hospital." She opines that "Mr. Hernandez received inadequate nursing care related to his sacral area" during his hospitalization with respondent. She concluded that plaintiff's father required the surgical and hospital treatments reflected in the records and bills from Hollywood Community Hospital, which were attached to her declaration, as a direct result of the treatment rendered at respondent's facility.[3] There is no evidence within the opposition papers to challenge respondent's fact No. 3, that all medical bills were paid either by Medicare or Medi-Cal.

A review of the record presented to the trial court demonstrates that the only out-of-pocket expenses identified by plaintiff in connection with this action relate to his father's burial, $2,600, identified in response to the special interrogatories. Because plaintiff's complaint does not assert that his father's death related to treatment rendered by respondent, the burial expenses identified are not causally connected to the litigation and are thus irrelevant. However, what is undisputed is that Medi-Cal or Medicare did pay for treatment rendered to plaintiff's father. Because respondent did not attempt to negate the fact that payments made by Medi-Cal or Medicare may have related to treatment required as a result of negligent treatment rendered by respondent, plaintiff had no duty to present evidence on that issue. Thus, we are left with a pure question of law: whether the fact of payment by Medi-Cal and Medicare precludes plaintiff from recovering damages for the alleged negligent treatment.

We first turn to the "collateral source" rule: "This doctrine provides that if an injured party received some compensation for his injuries from a

---

[3]Respondent objected to the declaration of Nurse Leary on various grounds. The minute order granting summary judgment states: "The Court has considered relevant, competent evidence and has disregarded irrelevant, incompetent evidence." Because we conclude respondent failed to establish a prima facie case, we need not address the sufficiency of Nurse Leary's declaration.

source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224].) Therefore, the collateral source rule precludes a defendant from presenting evidence that an injured plaintiff's medical expenses have been paid by an independent source. (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 9 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398].) While the rule may effectively allow a plaintiff to receive a double recovery, " '[t]he collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. . . . To permit the defendant to tell the jury that the plaintiff has been recompensed by a collateral source for his medical costs might irretrievably upset the complex, delicate, and somewhat indefinable calculations which result in the normal jury verdict. . . .' " (*Hrnjak v. Graymar, Inc., supra,* 4 Cal.3d at p. 730.)

Civil Code section 3333.1 modifies the rule with regard to medical malpractice cases. As pertinent, that section provides:

"(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence.

"(b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant." (Fn. omitted.)

The effect of this statute has been explained as follows: "The collateral source provision before us . . . is one of the provisions of

MICRA[4] which was intended to reduce the cost of medical malpractice insurance. Section 3333.1, *subdivision (a)* . . . authorizes a defendant in a medical malpractice action to introduce evidence of a variety of 'collateral source' benefits—including health insurance, disability insurance or worker's compensation benefits. Apparently, the Legislature's assumption was that the trier of fact would take the plaintiff's receipt of such benefits into account by reducing damages." (*Barme v. Wood* (1984) 37 Cal.3d 174, 179 [207 Cal.Rptr. 816, 689 P.2d 446], italics in original.) The first paragraph of footnote 5 immediately following this quote sheds more light on the subject. "Earlier drafts of section 3333.1, subdivision (a) *required* the trier of fact to deduct such collateral source benefits in computing damages, but—as enacted—subdivision (a) simply provides for the admission of evidence of such benefits, apparently leaving to the trier of fact the decision as to how such evidence should affect the assessment of damages." (*Barme v. Wood, supra,* at p. 179, fn. 5, italics added.) ▮ Thus, Civil Code section 3333.1 does not preclude recovery of such damages; rather, it allows the jury to decide how to apply the evidence in calculation of damages. As such, the fact that all medical expenses may have been paid from a collateral source, here Medicare and Medi-Cal, does *not* stand for the proposition that a plaintiff has suffered no recoverable damages, a proposition which served as the legal foundation for respondent's motion.

However, a more basic problem is presented by the fact that at least some of the payments made on behalf of plaintiff's father were through Medi-Cal. Such payments fall outside the scope of Civil Code section 3333.1 and recovery of Medi-Cal payments may be sought against either the successful plaintiff through the Medi-Cal lien procedure or in a direct action against the third party tortfeasor.[5] ▮ "Welfare and Institutions Code section 14124.71 et seq. specifically authorizes the director of the Department to recover against third party tortfeasors Medi-Cal payments either by lien or a direct action. To accept defendants' interpretation of section 3333.1 would create a direct conflict with the statutory recoupment sections." (*Brown v. Stewart* (1982) 129 Cal.App.3d 331, 341 [181 Cal.Rptr. 112]; see also *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272 [91 Cal.Rptr.2d 128], and *Holmes v. California State Auto. Assn.* (1982) 135 Cal.App.3d 635, 638-639 [185 Cal.Rptr. 521].)

▮ For the foregoing reasons, when respondent established that Medi-Cal and Medicare made payments on behalf of plaintiff's father, it necessarily established the fact of damage. Thus, the trial court erred in granting summary judgment.

---

[4]The Medical Injury Compensation Reform Act of 1975.

[5]Because respondent's undisputed evidence included proof of payments made by both Medi-Cal and Medicare, we need not address the issue of whether payments made by Medicare may also be excluded from treatment.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to plaintiff.

Vogel (C. S.), P. J., and Berle, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.