Filed 6/11/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAIME ARGUELLO AMAYA QUINTEROS<br><br>     Plaintiff,<br><br>v.<br><br>HARBOR DISTRIBUTING, LLC, et al.,<br><br>     Defendants and Respondents;<br><br>KEVIN A. LIPELES et al.,<br><br>     Objectors and Appellants. | A174202<br><br>(San Francisco County<br> Super. Ct. No. CGC24620226) |

This appeal arises out of an order issuing sanctions against Lipeles Law Group, APC and its attorneys Kevin Lipeles, Thomas Schelly, and Jasmine Badawi (together, LLG), for their evident misuse of generative artificial intelligence (AI) in an otherwise meritless pleading, which the court found constituted "serious violations" of the Code of Civil Procedure,[1] section 128.7, subdivision (b), and LLG's ethical and professional obligations under the Rules of Professional Conduct and the Business and Professions Code. LLG asks us to reverse the sanctions order contending, (1) the court violated the "safe harbor" provision within section 128.7, subdivision (c)(2), (2) its conduct did not merit the sanctions imposed, and (3) any award of

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

sanctions to the opposing party was improper.  But by failing to object to the timing or nature of the court's orders or otherwise raise the potential application of the safe harbor provision, LLG has forfeited these claims.  LLG's remaining contention that the sanctions were not justified has no merit, so we affirm.

## BACKGROUND

In June 2024, on behalf of Sonia Elizabeth Valero Ascensao and a class of similarly situated individuals, the Lipeles Law Group filed a class action complaint in Los Angeles County alleging varied violations of California's wage and hour laws by Harbor Distributing, LLC, Reyes Holdings, LLC, and Reyes Beverage Group (L.A. County Super. Ct., June 13, 2024, No. 24STCV14911) (*Ascensao* or the Los Angeles action).  In August 2024, the Lipeles Law Group amended the *Ascensao* complaint to seek penalties under the Private Attorneys General Act (PAGA).

In December 2024, on behalf of Jaime Arguello Amaya Quinteros and a class of similarly situated individuals, LLG filed the class action complaint in San Francisco Superior Court that gives rise to this appeal (Super. Ct., S.F. City and County, Dec. 2, 2024, No. CGC-24-620226) (*Quinteros* or the San Francisco action).  *Quinteros* alleged wage and hour violations by Harbor Distributing, LLC, Reyes Holdings, LLC, Reyes Beverage Group, and Golden Brands Beverage Group (together, Harbor).[2]  In February 2025,[3] LLG

---

[2] According to Harbor's June 2025 motion to stay discussed below, "The addition of 'Defendant Golden Brands Beverage Group' as a further named defendant does not impact the application of the doctrine of exclusive concurrent jurisdiction because:  (1) it is not a corporate entity (and at most is simply a dba), (2) it never employed plaintiff, and (3) in any event (as explained *infra*, the doctrine does not require identity of parties)."

[3] All further dates are in 2025 unless otherwise specified.

amended the *Quinteros* complaint to seek penalties under PAGA.

In April, the parties filed an initial " 'Joint Case Management Conference Statement' " in *Quinteros*, which identified Harbor's "meet-and-confer position" that the later-filed San Francisco action "should be stayed under the doctrine of exclusive concurrent jurisdiction" pending resolution of the Los Angeles action.

On June 13, Harbor filed a motion to stay *Quinteros* pending resolution of the Los Angeles action because the later-filed San Francisco action was an "overlapping, duplicate, copycat action." Harbor requested, and the trial court granted, judicial notice of the complaint filed in *Ascencao*, which was submitted with the motion.[4]

On June 27, LLG filed an opposition to the motion to stay; Lipeles, Schelly, and Badawi were all named in the caption, and Badawi signed the pleading on LLG's behalf. LLG opposed the stay because it claimed, "California law . . . requires complete—not partial—overlap" between the two actions.

On July 3, Harbor filed its reply, asserting that the opposition misstated the law, ignored relevant authority, failed to dispute the material facts supporting a stay, and did not attempt to explain why the same law firm was prosecuting duplicative class actions in two separate forums. Specifically, Harbor complained that the opposition cited cases for principles that were the "exact inverse" of their true holdings; the opposition's "internally inconsistent argument" was "contrary to controlling law and rests

---

[4] The *Ascencao* complaint is not part of the appellate record; therefore, we presume the trial court's finding of "substantial factual overlap between the actions" is correct. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 ["Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]"].)

3

on Plaintiff's multiple misrepresentations and erroneous citations of authority" that "permeate[] Plaintiff's opposition."

On July 8, the court issued a tentative ruling granting Harbor's motion to stay under the court's inherent authority and the doctrine of exclusive concurrent jurisdiction and noticing in a footnote, "The court is separately issuing an Order to Show Cause re Sanctions based on [LLG's] miscitation of cases, fabrication of quotations, and blatant misrepresentation of authority." LLG "stipulated to" the tentative ruling.[5] On July 9, the court "adopted" the tentative ruling in a court order that found LLG's "arguments [against a stay were] unavailing in light of the controlling legal standard and the substantial factual overlap between the actions." The court found it "undeniable that the two actions are substantially similar, involving nearly all of the same parties and claims." "Here, eight of the nine causes of action" overlapped, "both actions [were] filed by the same plaintiff's firm," purportedly seeking to represent classes working "during closely overlapping time periods." The order included the footnote noticing the separately issued order to show cause (OSC) re sanctions.

The separately issued OSC re sanctions explained its basis as LLG's opposition brief, which "contains non-existent citations, fabricated quotations, and seriously misrepresents controlling authority." More specifically, LLG repeatedly cited and relied on two cases as authority, but, as the court noted in *bold* font, "Neither citation is accurate or even exists."

---

[5] Appellants filed an appendix in lieu of a clerk's transcript that does not include the tentative ruling, the stipulation to the tentative ruling, or a reporter's transcript or minute order for any July 9 proceeding. We therefore divine this sequence of events and the content of the tentative ruling from the pleadings filed in connection with the motion for stay and the language of the court's orders.

4

The court compared quotations from the opposition to existing legal authority and stated, LLG "repeatedly and seriously misrepresent[s] the holdings of these and other cases" and "blatant misrepresentations appear throughout the brief." The court pointed out, "the brief contains no fewer than eight fabricated quotations that purportedly appear in cases cited by" LLG and stated, again in bold font, "Literally every other purported quotation from a case in the brief is similarly fictitious." The court expounded: "If these fabricated quotations were created by the use of a generative artificial intelligence tool such as ChatGPT, they are even more insidious than quotations from 'hallucinated' cases because they are attributed, falsely, to actual reported (if miscited) cases, which renders them more difficult and burdensome to detect."

The court concluded that the conduct appeared to constitute "serious violations" of section 128.7, subdivision (b)(2), as well as counsel's ethical and professional obligations under the Business and Professions Code and the Rules of Professional Conduct. (Quoting Bus. & Prof. Code § 6068, subd. (d); Rules of Prof. Conduct, rules 3.1(a)(2), 3.3(a)(1), (2), and citing *Park v. Kim* (2d Cir. 2024) 91 F.4th 610, 615; *United States v. Hayes* (E.D. Cal. 2025) 763 F.Supp.3d 1054, 1064; and *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 676–678.) LLG was thus ordered to show cause at or before a hearing scheduled for July 11, "why the Court should not impose monetary sanctions on [LLG], jointly and severally, in the amount of $5,000 payable to Defendants and $1,000 payable [to] the Court, together with other appropriate sanctions or nonmonetary conditions necessary to deter repetition of this conduct or comparable conduct by others similarly situated."

Lipeles, Schelly, and Badawi each filed declarations in response to the OSC in which they apologized to the court, stated they had "no intention to

5

mislead or misrepresent anything to the Court or to opposing counsel," and asked that sanctions not be imposed. They explained that, as a small firm, they "regularly contract with attorneys to handle law and motion work." Lipeles represented he had told Badawi, a fourth-year associate and "seasoned attorney" with the firm, that she could use contract attorney James Sansone to draft the opposition. The firm had worked with Sansone "for over a year now"; his work was "solid and good quality," and LLG had "no basis to question whether he was citing cases correctly or making valid arguments based on those cases and statutes."

Badawi stated that she had reviewed the opposition Sansone had drafted, the writing was "consistent with Mr. Sansone's prior work," and she "had no reason to question the integrity of the work product" or think that the "citations were inaccurate, misapplied or that the Opposition included unsupported arguments." Lipeles and Schelly similarly represented that they had "no reason to suspect or believe that Mr. Sansone was using artificial intelligence" to create his work product or that he "was not citing to actual cases, inventing case quotes, or using authority improperly." After the court issued the OSC, Schelly stated that he had contacted Sansone who assured him that Lexis confirmed "every citation was a valid citation" but qualified that he "had been experiencing 'issues' with Lexis."

Sansone also filed a declaration at Schelly's request, in which Sansone represented that he used Lexis and Lexis Protégé to draft the opposition and had used the "Lexis Citation Check function" to "verify the accuracy, validity, and treatment of all cited legal authorities." Sansone stated, "I ran the citation check three separate times to ensure thorough validation. This is consistent with my regular practice, which reflects the high level of diligence I bring to all my filings" and claimed the "citation check confirmed that all

6

authorities included in the motion were accurately cited." Sansone denied the use of any generative AI tools; he was "surprised and deeply concerned" by the assertions in the OSC. Sansone requested the court not impose the proposed sanctions and attached as an exhibit a document he said was a printout of his Lexis citation check.

At the July 11 hearing on the OSC, Schelly and Badawi appeared in person as the court had directed.[6] The court began the hearing by explaining the reason for the OSC: "The brief contained inaccurate citations, misrepresentations of California law, and remarkably eight different purported quotations from cases that are as far as the court can determine, entirely fabricated, invented, they don't exist. [¶] They don't appear in any of the cited cases. They don't appear in any reported California case authority."

Speaking on LLG's behalf, Schelly apologized to the court and stated, "we're all absolutely embarrassed, dismayed, upset that something like this has occurred involving our firm." The court responded, "unfortunately, Mr. Schelly, the damage is done, but in the sense that both the court and your opponent had been put [through] the burden of reading and responding to a brief that turned out to be dishonest and—literally, almost literally, at every page. [¶] This is the worst example of misconduct by a lawyer that I think I've ever seen since I've been on the bench." Having reviewed the declarations submitted in response to the OSC, the court expressed amazement that Sansone did "not acknowledge any mistake at all," "makes no effort to explain how it is that the brief that he apparently authored contained fabricated quotations, that it misrepresented the holdings of cases 180 degrees opposite of what they actually held," and had provided no apology.

_____

[6] Lipeles requested to appear remotely due to a medical condition.

7

The court recited the case history, including LLG's filing of the Los Angeles action in June of 2024, followed by its filing of the San Francisco action in December of 2024 with 9 of 10 "identical" claims. The court asked LLG directly, "Why did you file a second substantially similar action in a different county against the same defendants asserting substantially the same causes of action?" Schelly replied, "Well, I believe we just weren't aware that the other class action had already been filed."[7] The court asked again, "Why did you file a substantially duplicative action in San Francisco . . . ?" Lipeles answered, "Honestly I—I don't know. . . . It must have been a mistake . . . . [¶] [T]he only thing I can figure is . . . we didn't realize that we had filed it."

The court followed up by asking, if the filing of the San Francisco action was a mistake, "why did you decide to oppose the motion to stay?" Lipeles acknowledged, "I didn't look at the pleadings"; he "thought that they were seeking a stay because there was another class action that somebody else had filed." Schelly similarly stated he was unaware of the Los Angeles action. Badawi, who was the "handling attorney" on the San Francisco action said the confusion was because the Los Angeles action was assigned to another team within the law firm. After Lipeles assigned her the motion to stay, Badawi "didn't formulate any view of [her] own as to whether the motion was meritorious, whether it should be opposed or not, and . . . didn't give Mr. Sansone any direction." When Badawi realized their firm had filed the Los Angeles action, she brought it to Lipeles's attention, who agreed they needed to discuss "these cases," but they "did not get the chance."

---

[7] Lipeles interjected, suggesting confusion surrounding the dismissal and re-addition of a defendant entity in the Los Angeles action. Harbor provided additional detail and characterized the dismissal and subsequent amendment in Los Angeles as "buyer's remorse."

Lipeles asked the court, "If you'd let me look into it and give you a declaration as to what exactly happened and why we filed the two cases . . . ." Noting that the complaint in the Los Angeles action had been submitted with the motion for stay, the court reminded counsel, "Sir, today is your opportunity to address what happened here. . . . [¶] . . . [¶] And the fact that you haven't even figured out that you had filed the prior action, even though that's the very thing that was the basis for the defendant's motion here, is just eye opening to me." The court asked if there had been a discussion "whether to oppose [the motion] or not," and Lipeles explained that in assigning these law and motion matters to contract attorneys, "we only have a few people that we use that we've had for a long time . . . . [¶] [W]e trust that they review it, and if there's not a meritorious opposition, we don't file it."

To clarify, the court asked, "So you're telling me now I think that you never bothered to read the motion, and you never bothered to figure out that the prior filed action, which was the basis for that ruling, was filed by your firm," to which Lipeles responded, "Correct, your Honor, but . . . I can't review every document that comes into the firm."

The exchange continued: Schelly never discussed the motion to stay with Badawi; neither Schelly nor Lipeles reviewed Sansone's opposition before it was filed; Badawi "read the brief and to make sure that the argument flowed and to make sure that he covered each point . . . . [¶] But . . . did not fact check or cite check." Badawi did not read the cases cited in the brief but represented she was familiar at the time with "the doctrine of exclusive concurrent jurisdiction" and acknowledged the principal argument made in the brief "is wrong" and "should have stood out to me"; Badawi conceded, "I should have not put my name on it."

Although he assisted Sansone in filing his declaration, Schelly did not have any discussions with Sansone about the declaration's substance, which did not offer any explanation or acknowledge any "mistakes" or "invented quotations" in the opposition. Badawi had also attempted to contact Sansone, who was "ignoring" her until his wife telephoned and represented Sansone had "been having issues with this Lexis new program . . . programs that [can] cite check . . . ." During the call, Badawi could hear Sansone in the background saying, "I didn't use AI, I didn't use ChatGPT . . . . I can submit the Lexis AI Cite check." Lipeles stated that LLG "felt violated ourselves with this that we put our trust in him."

LLG acknowledged that as the attorneys who filed the brief with the court, "if their name is on the brief, regardless of who did the work," they "bear the ultimate responsibility to the court for the truthfulness and ethical obligations that [they] bear as attorneys." The court repeated, "you basically . . . outsourced all of your judgment, all of your decision-making here to a lawyer outside your law firm . . . and assumed that that lawyer knew what he was doing." To which Schelly responded, "Yes," and Lipeles followed, "He's done fantastic work for us in the past." The court explained, "I'm going to have to think about what to do here. What is at issue . . . is not just monetary sanctions but reporting this matter to the State Bar. [¶] I see no way around that. . . . But, as I say, this is the most egregious example of misrepresentation of the law that I've ever seen." The court opined, "It seems to me you basically abdicated your responsibility here . . . . [¶] It imposed additional costs on your opponent and on the court. This is a motion that never should have had to have been brought in the first place and that you had no good faith basis to oppose."

10

Harbor added that it did not know how LLG could claim it was "surprised to learn that there was the previously filed *Ascensao* action filed by their firm" because "in advance of the case management conference held in this matter before we filed . . . the motion to stay, we had met and conferred with their office regarding *Ascensao* and why they were pursuing this duplicative action in the case management statement that we filed with the court that explicitly identified *Ascensao* and . . . that was filed by the same firm." The court took the OSC under submission.

That same day, after the hearing concluded, Schelly filed an additional declaration in which he represented that LLG had filed two separate lawsuits because "the classes are not the same, and we were informed that there would be a settlement pending" for a class in the Los Angeles action that would not have covered all of the members of the class in the San Francisco action.

On July 16, the court issued an order re sanctions in which it sanctioned LLG and granted "other related relief." The court summarized the procedural history of the Los Angeles and San Francisco actions and the substance of the motion to stay and the opposition. It found the cases to be "substantially similar" and LLG's argument in opposition to be "groundless." The court found Sansone's written testimony "entirely lacking in credibility" in view of the "glaring omissions" in his declaration, in which "he did not explain why the brief contains multiple inaccurate citations to two key cases" or "how it is that no fewer than eight fabricated quotations from five different cases found their way into the brief." The court further found the responses of Lipeles, Schelly, and Badawi were "to put it mildly, disturbing" and in some instances "false." For example, despite LLG's representations it did not realize the firm had filed the Los Angeles action, in the *joint* case

management conference statement filed by the parties more than two months before the filing of the motion to stay, Harbor had referred to the Los Angeles action as an " 'overlapping putative class action and . . . PAGA action, filed by [LLG] in the instant action.' "

The court concluded, "The conduct of *all* Plaintiff's counsel involved in this action, including both Plaintiff's counsel of record who filed and signed the brief in question and the contract attorney who prepared it, falls far short of their professional and ethical obligations, and warrants substantial sanctions." The court explained, "Mr. Sansone's conduct is particularly blameworthy because not only did he evidently utilize generative AI to prepare the brief in question, he denied under oath having done so." But, it continued, LLG is "not absolved of responsibility merely because [it] outsourced preparation of the brief to Mr. Sansone. . . . Counsel of record's names appeared on the brief, and one of them signed it. Thus, as counsel acknowledged at the hearing, they bear ultimate responsibility for the accuracy and reliability of the brief." The court further found LLG "essentially abdicated [its] duty of competence to their client as well as [its] duty to the court."

Accordingly, in view of the "serious violations of Section 128.7[, subdivision] (b) as well as of counsel's ethical and professional obligations under the Rules of Professional Conduct," the court ordered sanctions consistent with the noticed OSC against Lipeles Law Group, and Lipeles, Schelly, and Badawi, jointly and severally, in the amount of $5,000 to Harbor and $1,000 to the court, payable within 10 days. The court ordered LLG to serve a copy of the order on Quinteros and with the superior court judge presiding over the Los Angeles action within 10 days, as well as on any judge of the San Francisco Superior Court "before whom they appear in any action

12

pending or filed in this Court within one year from the date of entry of this Order." On July 22, LLG filed notice with the court representing its compliance with the order.

Pursuant to section 904.1, subdivision (a)(12), LLG timely appeals.

## DISCUSSION

LLG articulates three grounds for its appeal: (1) the sanctions should be reversed because the court did not adhere to the procedural safeguards in section 128.7, subdivision (c)(2), (2) the conduct does not merit the imposed sanctions, and (3) the award of sanctions to Harbor is improper. We conclude that LLG has forfeited its claims of procedural error and the impropriety of awarding sanctions payable to Harbor and otherwise determine the sanctions imposed were not an abuse of discretion.

## I. Procedural Challenges Forfeited

LLG contends the court erred procedurally because it deprived LLG of "the safe harbor protection in three respects, meriting reversal of the sanctions order." First, the July 8 OSC did not advise LLG that it had 21 days to withdraw its opposition to the motion to stay to avoid sanctions, as LLG contends is required by section 128.7, subdivision (c)(2).[8] Second, the court's setting of the hearing on the OSC for July 11 gave LLG only three days to act after the July 8 issuance of the tentative ruling, and the sanctions order filed on July 16, only five days after the hearing, meant LLG had less than what it claims is the required 21 days to withdraw the offending

---

[8] Section 128.7, subdivision (c)(2) provides, "On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b) [certifying the propriety of the filings and positions put before the court] and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b), unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected."

opposition. Last, because the court's tentative order granting the motion to stay became final on July 9 and therefore "resolved" the motion, LLG contends the court's ruling improperly precluded the withdrawal of the opposition. LLG acknowledges that it "did not raise the safe harbor issue in the trial court" but asserts in a footnote that because its argument presents a question of law, it is not waived on appeal. (Citing *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 129 (*Barnes*).)

But fundamental appellate principles require us to reject these procedural challenges for four reasons. First, as LLG concedes, it failed to assert or even mention the potential protections of section 128.7 in the trial court. " 'It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal.' " (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249, quoting *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3; *Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1152 [" ' "[i]ssues not raised in the trial court cannot be raised for the first time on appeal" ' "].) Indeed, multiple courts have deemed arguments based on the failure to comply with section 128.7's safe harbor provision forfeited when not raised before the trial court. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 825–826 [because appellant "did not attempt to raise [the safe harbor] issue below," "we decline to consider the issue now"]; *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447 [safe harbor argument forfeited because "appellants never raised the issue below"].) The purpose of the forfeiture rule is to allow the trial court to correct error—particularly procedural error—where the asserted errors are apparent at the time they were made and could have been avoided had there been an objection by the party belatedly complaining about the errors for the first time on appeal.

14

(*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.) Where issues have been forfeited, we may exercise discretion to decide pure questions of law on undisputed facts, but that discretion should be " 'exercised rarely and only in cases presenting an important legal issue.' " (*In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

This case does not raise the kind of "important legal issue" that warrants the rare exercise of our discretion, and LLG's reliance on *Barnes* is not persuasive. First, in the context of the analogous section 128.5, which also contains a 21-day safe harbor provision, courts have expressly stated that the safe harbor provision does not present "a matter of vital public policy." (*City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 735; see also *Jansen Associates, Inc. v. Codercard, Inc.* (1990) 218 Cal.App.3d 1166, 1170 ["In failing to raise the issue of inadequate notice during the hearing, failing to request a further hearing on the matter, and failing to file a motion to reconsider the issue, [appellant] waived any objection he may have had upon that ground"]; see also § 128.5, subd. (f).)

Second, *Barnes*—which concerned a motion for sanctions pursuant to section 128.7, subdivision (c)(1) filed by a party, not an OSC under 128.7, subdivision (c)(2) issued by the court—involved very different circumstances from the instant case. (*Barnes*, *supra*, 74 Cal.App.4th at p. 129.) *Barnes* arose out of a motion for sanctions challenging a complaint as " 'frivolous' " that was not filed until three months after a posttrial judgment had been entered. (*Ibid.*) In this postjudgment context, the Court of Appeal considered the application of section 128.7, subdivision (c)(1), despite plaintiff's failure to raise a safe harbor objection before the trial court, and determined, "the legislative intent was to require filing a motion for sanctions *before the*

15

*resolution of the case.*" (*Barnes*, at p. 133, italics added.) Thus, "a section 128.7 sanctions motion served and filed by a defendant *after judgment has been entered* cannot properly be granted if the conduct alleged to be sanctionable is the improper filing and/or advocating of the plaintiff's complaint." (*Id*. at p. 128, italics added.)

By contrast, here, the OSC was issued by the court at the comparative start of the case, after months of unsuccessful meet and confer efforts between the parties, a joint case management statement explaining the concurrent jurisdiction conflict, a seemingly unnecessary motion to stay that attached the complaint from the Los Angeles action, and a completely false artificially fabricated pleading filed in opposition. As the trial court stated, "the damage is done . . . in the sense that both the court and your opponent had been put to the burden of reading and responding to a brief that turned out to be dishonest and—literally, almost literally, at every page." Complaining now, for the first time on appeal, that LLG needed an additional 21 days to respond when all prior informal and formal attempts at encouraging "an opportunity to correct" had been unsuccessful is unconvincing. (See *Peake v. Underwood*, *supra*, 227 Cal.App.4th at p. 447 [in addition to waiving the argument by failing to raise it below, "it appears that any additional safe harbor period would have been futile because it was clear that appellants would not have dismissed their [challenged] claims"].)

Going further, LLG had the opportunity to investigate the Los Angeles action and withdraw its opposition even before Harbor filed its reply pointing out the legal inaccuracies, but it did not. Nor did LLG withdraw its opposition after the court issued a tentative ruling granting the motion, which itself specifically noted the intent to separately issue an OSC re sanctions. Instead, LLG stipulated to the tentative ruling granting the

16

motion to stay. LLG cannot now on appeal claim that by "resolv[ing]" the motion to stay "on the merits," the court deprived LLG of an "opportunity to take corrective action." (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000 [" 'when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error' "].) Because the loss of any opportunity to cure was the result of LLG's own conduct, we decline to consider its self-manufactured basis for appeal. (See *People v. Midell* (2025) 113 Cal.App.5th 1060, 1072–1075 [applying invited error doctrine to counsel's "deliberate and tactical decisions"].)

Indeed, even when LLG responded to the OSC, it did not acknowledge or explain its conduct or request additional time to rectify its wrongs. In fact, Sansone's declaration denied the use of AI or any inaccurate citations. And at the hearing, LLG continued to deny knowledge of the almost identical Los Angeles action that LLG itself had filed, only then requesting more time to "look into it and give you a declaration as to what exactly happened and why we filed the two cases," despite that being "the very thing that was the basis for the defendants' motion here."

Further, the court provided LLG with many opportunities to comment on any perceived errors in the OSC and the sanctions proposed within, including: receiving the attorneys' declarations in response to the order, welcoming further verbal explanation of their position at the hearing, and permitting the filing of Schelly's unauthorized posthearing declaration, none of which made any reference to the now-asserted procedural errors.

Third, we do not consider undeveloped arguments without appropriate headings and analysis. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 ["stating a bare assertion" without analysis is insufficient to show error];

17

*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555 [arguments made in footnotes are forfeited].) Here, LLG relegates its request for us to exercise our discretion and decide the forfeited issues to a footnote, which fails to offer any reasoned explanation of why its procedural challenge presents a vital question of law that we should reach.

Finally, in their reply brief, LLG claims for the first time that the asserted safe harbor violation "involve[s] important issues of law, in that the Legislature has mandated, as a matter of public policy, that attorneys and parties be sanctioned *only after* they are allotted twenty-one days to correct or withdraw an offensive pleading." On its face, this argument appears to be a distortion of *Barnes*'s focus on "the final disposition," but, because "We will not ordinarily consider issues raised for the first time in a reply brief," we decline to reach this issue and comment further. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275.)

Considering the foregoing, we conclude LLG's procedural challenges to the court's sanctions order have been forfeited.[9]

## II. LLG's Sanctionable Conduct

LLG next contends that its conduct did not merit the sanctions imposed. It argues that "the punishment does not fit the crime" even though it "conceded that [LLG was] remiss in relying solely on Sansone to determine if an opposition to the motion to stay was warranted and not checking his citations prior to filing the opposition." LLG contends that because it did not

---

[9] Determining forfeiture, we need not discuss Harbor's alternative arguments that the Business and Professions Code, California's Rules of Professional Conduct, California Rules of Court rule 2.30(b), and San Francisco County Superior Court Local Rules 1.1 and 3.0(c)(2) provide additional authority for the sanctions issued by the court. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225 ["we may affirm the court's sanctions order on any ground supported by the record"].)

utilize generative AI to draft the "offensive pleading," sanctions against the law firm and Lipeles, Schelley, and Badawi were improper and the court's failure to take action against Sansone renders the sanctions order "fundamentally unfair." We disagree.

"We review a sanctions order for an abuse of discretion. [Citation.] Under that standard, we 'presume the trial court's order is correct and do not substitute our judgment for that of the trial court.' [Citation.]" (*Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 438 (*Noland*).) Section 128.7 " 'authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers.' " (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1120.) A court may on its own motion impose sanctions if it concludes a pleading was filed for an "improper purpose" or the "legal contentions therein are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subds. (b)(1), (2) & (c)(2).)[10] " 'A claim is factually frivolous if it is "not well grounded in fact" and is legally frivolous if it is "not warranted by existing law or a good faith argument for the extension, modification, or reversal of

[10] See also Business and Professions Code section 6068, subdivision (d) (duty "[t]o employ . . . those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law"); Rules of Professional Conduct, rule 3.1(a)(2) (prohibiting attorneys from "present[ing] a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of the existing law"); *id.*, rule 3.3(a)(1) (prohibiting "knowingly mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer"); and *id.*, rule 3.3(a)(2) (prohibiting "knowingly misquot[ing] to a tribunal the language of a book, statute, decision, or other authority").

19

existing law." [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if "any reasonable attorney would agree that [it] is totally and completely without merit." [Citations.]' " (*Kumar*, at p. 1120.)

"In the last two [and a half] years, many courts have confronted briefs populated with fraudulent legal citations resulting from [parties'] reliance on generative AI" and "have concluded that filing briefs containing fabricated legal authority is sanctionable." (*Noland*, *supra*, 114 Cal.App.5th at pp. 443–444 [ordering appellant's attorney to pay $10,000 in sanctions to the clerk of the court because of his admitted reliance on fabricated legal authority spawned by his use of generative AI].) " ' A fake opinion is not "existing law" and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system.' " (*Id.* at p. 445, quoting *Mata v. Avianca, Inc.* (S.D.N.Y. 2023) 678 F.Supp.3d 443, 448, 461, 466, fn. omitted [district court imposed $5,000 in sanctions on both attorney of record and outsourced attorney performing work because they submitted non-existent judicial opinions with fake quotes and citations created by AI and then "continued to stand by the fake opinions after judicial orders called their existence into question"].)

"Simply stated, no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether provided by generative AI or any other source—that the attorney responsible for submitting the pleading has not personally read and verified." (*Noland*, *supra*, 114 Cal.App.5th at p. 431.) " ' "Honesty in dealing with the courts is of paramount importance,

20

and misleading a judge is, regardless of motives, a serious offense." ' " (*People v. Alvarez* (2025) 114 Cal.App.5th 1115, 1119 (*Alvarez*) [sanctioning attorney $1,500 to be paid to the court after an attorney "admitted to violating his professional duty by including a hallucinated citation and misrepresenting the law provided in other opinions"]; see also *Sheerer v. Panas* (2026) 119 Cal.App.5th 367, 371 [declining to impose sanctions on appeal but stating "our warning to litigants is not merely an admonition to doublecheck citations and otherwise fastidiously comply with the [California] Rules of Court; it is to be at all times truthful and to be responsible in crafting any written arguments presented"].) "[A]ttorneys must check every citation to make sure the case exists and the citations are correct. [Citation.] Attorneys should not cite cases for legal propositions different from those contained in the cases cited. [Citation.] And attorneys cannot delegate this responsibility to any form of technology; this is the responsibility of a competent attorney." (*Alvarez*, at p. 1119.)

In view of this ever-growing body of law, we conclude the trial court did not abuse its discretion in imposing sanctions here. LLG never fully explained why it filed the "substantially duplicative" San Francisco action six months after filing the Los Angeles action. The opposition to Harbor's motion to stay filed by LLG was based on a fake legal argument that was "groundless." The opposition included "inaccurate case citations, fabricated quotations, and seriously misrepresented controlling authority." Specifically, two case citations did not exist and LLG "repeatedly misrepresented the holdings of these and other cases." The brief was pervaded by "blatant misrepresentations" throughout and "no fewer than eight fabricated quotations from California cases cited by [LLG]."

21

After being confronted with these errors, Lipeles, Schelley, and Badawi apologized, expressed ignorance, and represented the absence of any specific intent to mislead. But their false citations and misrepresentations in their seemingly non-meritorious brief violated numerous duties to which they must be held as attorneys including, as noted by the court, "a lawyer's duty of competence, which requires that lawyers review and evaluate the output produced by generative AI before submitting it to a court. (ABA Form. Opn. 2024-512, Generative Artificial Intelligence (July 29, 2024); State Bar of California, Standing Committee on Professional Responsibility and Conduct, 'Practical Guidance for the Use of Generative Artificial Intelligence in the Practice of Law.' . . .)" (See also Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Conduct, rules 3.1(a)(2); 3.3(a)(1), (2).)

LLG was counsel of record, not Sansone, and as the trial court stated, "[it] bear[s] ultimate responsibility for the accuracy and reliability of the brief. [It is] therefore responsible for the misrepresentations of authority and fake case quotations it contained." But at the OSC hearing and now on appeal, LLG shifts the blame to Sansone and still seeks "to disclaim any responsibility for the inaccurate citations, fabricated quotations, and misrepresentations of controlling authority" instead of accepting full responsibility for its filed opposition or acknowledging the specious nature of the San Francisco action. (See *Noland*, *supra*, 114 Cal.App.5th at p. 443; *Alvarez*, *supra*, 114 Cal.App.5th at p. 1119; *Mata v. Avianca, Inc.*, *supra*, 678 F.Supp.3d at p. 461.) At the hearing on the OSC, LLG was unable to clearly articulate why the San Francisco action had been filed or why it decided to oppose the motion to stay. LLG even provided questionable statements denying awareness of the Los Angeles action that LLG had filed and stating LLG opposed the stay because it was never told the San

Francisco complaint was duplicative. LLG's responses to the court's questions were, "to put it mildly, disturbing." In signing and filing the opposition, Badawi and LLG certified that "after an inquiry reasonable under the circumstances" the "legal contentions therein are warranted by existing law." (§ 128.7, subd. (b)(2).) Yet LLG admitted to the court that it either failed to read the pleading at all, in the case of Schelly and Lipeles, or failed to substantively review or cite check Sansone's submission, in the case of Badawi.

But, despite Sansone's failure to acknowledge "any errors at all," the substance of the opposition was false, and its filing—when considered in connection with the substantially similar Los Angeles action LLG had previously filed—was frivolous. (*Noland*, *supra*, 114 Cal.App.5th at p. 444.) As summarized by the court: "The conduct of *all* Plaintiff's counsel involved in this action, including both Plaintiff's counsel of record who filed and signed the brief in question and the contract attorney who prepared it, falls far short of their professional and ethical obligations." Further, "Counsel's conduct in utilizing generative AI to prepare a brief without checking whether it contains accurate case quotations and citations is indisputably improper." As such, LLG "fundamentally abdicated [its] responsibility to the court and to [its] client." (*Id.* at p. 445.) The court's sanctions order was not an abuse of discretion.[11]

_____

[11] LLG did not directly challenge the amount of payment ordered as a sanction in its appellate briefing, only tangentially suggesting, "Should the Superior Court's order pass procedural muster, a similar sanction would be proper in this instance." (Referencing *Alvarez*, *supra*, 114 Cal.App.5th at pp. 1119–1120 and its sanction of $1,500 for an attorney's use of AI, "considering his contrition.") But, at oral argument, LLG both challenged the sanction amount and improperly cited "new" authorities it had not previously brought to the attention of opposing counsel or the court in an acknowledged

### III. Challenge to Sanctions Ordered to Harbor Forfeited

Finally, LLG argues the court's award of $5,000 to "defense counsel" should be reversed because sanctions payable to a defendant is not permitted when a court sets an OSC on its own motion under section 128.7.[12]  (Misciting

---

violation of the California Rules of Court and the Local Rules for the First District Court of Appeal.  (See Cal. Rules of Court, rule 8.254(a) ["If a party learns of significant new authority . . . that was not available in time to be included in the last brief that the party filed or could have filed, the party may inform the Court of Appeal of this authority by letter"]; Ct. App. First Dist., Local Rules of Ct., rule 16 ["Parties submitting a letter of new authorities prior to oral argument under California Rules of Court, rule 8.254 must submit the letter when the authorities become available and as far in advance of any scheduled oral argument as possible"].)

This violation of the rules is itself sanctionable, particularly where counsel failed to provide full case citations for the court's reference.  (See Cal. Rules of Court, rule 8.276(a)(4) [on its own motion, Court of Appeal may impose sanctions on a party or an attorney for "Committing any other unreasonable violation of these rules"].)  And we will not decide issues raised for the first time at oral argument.  (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 500 ["When an appellant fails to raise an issue in the opening brief, raising it for the first time . . . at oral argument, we generally decline to address the issue or address it in a summary manner"].)

However, we do note that this joint and several sanction of $6,000 is far less than the "conservative" $10,000 sanction issued against a single attorney in *Noland*.  (*Noland*, *supra*, 114 Cal.App.5th at p. 448 [recognizing other sanctions for frivolous appeals ranging between $6,000 and $12,500].)  Considering the conduct described above and the trial court's repeated exclamation, "This is the worst example of misconduct by a lawyer that I think I've ever seen since I've been on the bench," we see no error in the amount of sanctions ordered.

[12] Section 128.7, subdivision (d)(2) provides in relevant part that "A sanction imposed for violation of subdivision (b) . . . may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing

what we presume to be *Interstate Specialty Marketing, Inc. v. ICRA Sapphire, Inc.* (2013) 217 Cal.App.4th 708, 716; *Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 436–437; and *Noland, supra*, 114 Cal.App.5th at p. 448.) Again, LLG forfeited this claim by failing to raise it below and inadequately presenting the argument to us.

First, like its safe harbor claim, LLG did not object to the order of the payment of sanctions to Harbor before the trial court and therefore cannot now object for the first time on appeal. (See *Doe WHBE 3 v. Uber Technologies, Inc., supra*, 102 Cal.App.5th at p. 1152.) Second, LLG's conclusory assertion of error is improper. (See, e.g., *Dilbert v. Newsom, supra*, 101 Cal.App.5th at p. 323 [To demonstrate error, an appellant must do more than "simply stating a bare assertion that the judgment 'is erroneous' . . . it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness' "].) LLG dedicates only five lines of its opening brief to its complaint of the award to Harbor, incorrectly citing for the first time *"Interstate Specialty Marketing, Inc. v. ICRA Sapphire, Inc."* as *"Interactive Specialty, Inc., supra,"* without any discussion or analysis. Unlike its safe harbor claim, LLG does not even acknowledge its failure to raise the issue before the trial court—key to any analysis since the direction to whom sanctions should be paid was clearly stated in the notice of the OSC, as well as in the final court order—or ask us to exercise our discretion to reach the merits of its argument.

A developed argument is necessary not only to address the issue of forfeiture but also because Harbor identifies an alternative basis for the

---

payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation. . . ."

award of sanctions to a party. California Rules of Court, rule 2.30(b) permits a court to award sanctions "to the court *or an aggrieved [party],* or both." (Italics added.) On reply, LLG acknowledges this rule "might have" been a basis to properly award sanctions to Harbor but dismisses it without discussion as "of no importance."

Accordingly, we conclude LLG forfeited any challenge to the award of sanctions to Harbor by failing to adequately raise the argument below or on appeal.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

26

DESAUTELS, J.

We concur:

STEWART, P. J.

RICHMAN, J.

*Quinteros v. Harbor Distributing, LLC, et al.; Lipeles et al.* (A174202)

Trial Court:                                   San Francisco Superior Court

Trial Judge:                                   Hon. Ethan P. Schulman


Attorneys for Plaintiff, Objectors
and Appellants:                                Lipeles Law Group, APC
                                               Julian B. Bellenghi


Attorneys for Defendants and
Respondents:                                   Seyfarth Shaw LLP
                                               Sean T. Strauss
                                               Michael W. Kopp
                                               David D. Jacobson